Filed 11/5/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B257775 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA130219) |
| v. | |
| RANDOLPH D. FARWELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Paul A. Bacigalupo, Judge.  Affirmed.

Jasmine Patel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Randolph D. Farwell (defendant) was convicted of gross vehicular manslaughter (Pen. Code, § 192, subd. (c)(1)[1]) and driving when his driver's license was suspended or revoked (Veh. Code, § 14601.1, subd. (a)). On appeal, defendant contends that his conviction for driving while his license was suspended or revoked (count 2) must be reversed because the trial court did not explicitly advise him of his constitutional trial rights before accepting his stipulation to the substantive crime that he drove a vehicle while knowing his license was suspended.

We hold, in connection with the stipulation, the trial court did not commit reversible error. We review the entire record, not just the record of the stipulation colloquy, and under the totality of circumstances conclude the record affirmatively shows the stipulation was voluntary and intelligent. Therefore, we affirm the judgment.

# BACKGROUND

## A.    Relevant Proceedings[2]

On February 18, 2014, defendant continued his trial and was explicitly advised by the court of his right to trial: "[y]ou have the right to have your trial within 60 days . . . Do you understand . . . and give up that right, . . ." to which the defendant responded, "yes."

Just before trial, defendant's counsel informed the trial court that defendant was prepared to enter a no contest plea on count 2 so that "issue [is] taken out of the hands of the jury," or alternatively, move to bifurcate the trial on count 2. The prosecutor stated that she was not willing to accept the no contest plea, and objected to defendant's motion

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

[2]    Because the only claim on appeal is that the conviction on count 2 should be reversed, we do not include a statement of facts regarding the other charges.

2

to bifurcate on the ground that proof of count 2 was relevant to defendant's knowledge of recklessness in count 1. The trial court denied defendant's motion to bifurcate.

During the pretrial proceedings, and extensive jury voir dire, defendant became fully aware of his constitutional rights to trial, remain silent and confront and cross-examine witnesses well before he stipulated to the elements of count 2. No less than 45 times during jury voir dire defendant's right to trial, remain silent and cross-examine witnesses were discussed or mentioned. Before the stipulation was read the trial court informed the jury, "[T]he lawyers are going to agree to something, and it's called a stipulation . . . . And it's agreed that this information is true and correct, instead of having to bring witnesses in to testify about that." Defense counsel stipulated "on June 21st, 2013, [defendant] was driving a motor vehicle while his license was suspended for a failure to appear, and that when he drove, he knew his license was suspended[.]"

### B. Procedural Background

The District Attorney filed an information charging defendant with gross vehicular manslaughter in violation of section 192, subdivision (c)(1) (count 1), and driving when his driver's license was suspended or revoked in violation of Vehicle Code section 14601.1, subdivision (a) (count 2). It was also alleged defendant had a prior serious felony conviction as defined by sections 667, subdivision (a)(1), 667, subdivision (d), and 1170.12, subdivision (b).

Following trial, the jury found defendant guilty on all counts. Defendant admitted the prior conviction allegation, and was sentenced to state prison for a term of 13 years, consisting of the midterm of four years on count 1, doubled pursuant to the Three Strikes law, plus five years pursuant to section 667, subdivision (a)(1). The trial court imposed a concurrent term on count 2; awarded custody credits, and ordered payments of various fees, fines and penalties. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends his conviction for driving when his driver's license was suspended or revoked (count 2) must be reversed. He argues the stipulation entered into on his behalf, which admitted all of the elements of count 2, was invalid because he was not advised of, and did not waive, his trial rights, at the time the stipulation was entered. The Attorney General correctly notes the trial court's failure to explicitly advise defendant of his constitutional rights is not reversible error because defendant's "stipulation was voluntary and intelligent under the totality of the circumstances."

### A. Applicable Law

In *People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*), our Supreme Court recently stated, "When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 89 S.Ct. 1709] (*Boykin*).)"

A stipulation admitting the elements of the substantive crime is tantamount to a guilty plea and requires the defendant be aware of and waive his constitutional rights to trial. (*In re Mosley* (1970) 1 Cal.3d 913, 924-926, fn. 10; *People v. Little* (2004) 115 Cal.App.4th 766, 778.)

In determining whether defendant, prior to entering such a stipulation understood his constitutional rights, the failure of the trial court to explicitly advise defendant of those rights at the time of the stipulation is not reversible error if it is shown the admission was voluntary and intelligent. In making that determination we review the entire record and not just the admission colloquy. *Cross, supra*, 61 Cal.4th at pp. 179-180 ["[t]he failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' . . . a reviewing court must 'review[] the whole record, instead of just the record of the plea colloquy.']"

The development of this standard is traceable to *People v. Howard* (1992) 1 Cal.4th 1132 (*Howard*). Before *Howard,* the failure to advise a defendant of his

constitutional rights or secure his waiver of them prior to accepting a guilty plea under *Boykin, supra*, 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122, or admission of a prior conviction under *In re Yurko* (1974) 10 Cal.3d 857, made the plea or admission generally automatically reversible, regardless of prejudice. (*Howard, supra*, 1 Cal.4th at pp. 1174-1175.) The court in *Howard* stated, "We expressly based our decision in *Yurko* on the interpretations of federal law set out in *Boykin* and *Tahl*. [Citation.] However, the overwhelming weight of authority no longer supports the proposition that the federal Constitution requires reversal when the trial court has failed to give explicit admonitions on each of the so-called *Boykin* rights. Accordingly, we have no choice but to revisit our prior holdings. 'The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards.' [Citation.] [¶] [W]e now hold that *Yurko* error involving *Boykin/Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution. Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. [Citations]" (*Howard*, *supra*, 1 Cal.4th at p. 1175.) Whether the record affirmatively shows that the plea is voluntary and intelligent under the totality of the circumstances is a harmless error analysis. (*People v. Allen* (1999) 21 Cal.4th 424, 438; *People v. Little*, *supra*, 115 Cal.App.4th at pp. 780, 781.)

Therefore, it is unmistakably clear in making that determination we review the entire record, and not just the portion relating to the stipulation colloquy. *Cross, supra*, 61 Cal.4th at pp. 179-180 [In applying the totality of the circumstances test a reviewing court must review the whole record instead of just the record of the plea colloquy, citing *People v. Mosby* (2004) 33 Cal.4th 353, 361.]

Moreover, our Supreme Court in *Cross, supra,* 61 Cal.4th at p. 179, reiterated this rule without any reference to other appellate court decisions that distinguish between silent record cases and incomplete advisement cases, "[t]he failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.'

5

[Citation.]"

## B. Analysis

### The Totality of Circumstances

In defendant's presence the jury was told by the court he was charged with a felony, gross vehicular manslaughter, and a misdemeanor, driving while his license was suspended, and,

> "Those are the two charges. . . . So Mr. Farwell has pleaded not guilty to all of the charges. The People, the prosecution, has the burden of proving each and every essential element of the charges beyond a reasonable doubt. The purpose of the trial is for the jury to determine whether the People have met the burden of proving the defendant's guilt beyond a reasonable doubt. . . . A defendant in a criminal case is presumed to be innocent until the contrary is proved. And in the case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal."

The prosecutor told the jury,

> "The other legal concept that the court has alluded to is the presumption of innocence, which means that Mr. Farwell, as he sits here -- we've heard no evidence yet of what the charges allege. So the presumption is that he's innocent of these charges . . . . He has certain rights. . . . For example, when I call witnesses to the stand, she [defense counsel] has the right to cross-examine them. She doesn't have to. She could sit and just let me put on everything, but I'm sure that's not going to happen. I'm sure you'll see cross-examination. So she has her job, to protect her client's rights."

The defense counsel told the jury,

> "And the last issue I wanted to address . . . is the concept in the law that the defendant has a right not to testify. . . ."

The Court further explained,

"What she's saying is in our form of government, the constitution protects someone charged with a crime. They protect that person with the right to remain silent, and that right is when you talk to the police, when you go to court, he doesn't have to say a word. So if he chooses, and if his lawyer chooses, to not present any witnesses or to speak, that's their right, and we have to respect it. That's what they want to do. The obligation is for the prosecutor to prove her case beyond a reasonable doubt. She's got the job to prove up everything, so you cannot consider the fact, if he chooses not to testify. That's the rules. So can you follow the rules?

Then Defense Counsel stated: Just to put it the other way, is there anyone that would be unable to reach a verdict without hearing from Mr. Farwell? I see no hands."

On the day of trial, during pretrial hearings and jury voir dire defendant's right to trial, to remain silent, and confront and cross-examine witnesses was discussed or mentioned, no less than 45 times.

In addition, defendant unequivocally knew he had the right to a jury trial and cross-examination on count 2 because he was in the midst of that very jury trial, after a witness had been called and cross examined when he and his attorney made the strategic trial decision to stipulate to the elements of count 2.

Earlier in the morning on the day of trial, the court conducted Evidence Code section 402 hearings, reviewed the probation report, opined as to possible trial outcomes and told defendant:

"[W]hen it's all said and done, 12 people there, having heard all this testimony, and having also heard the strengths and weaknesses of the case—because defense counsel will point out the problems with the case, . . . or at least attack some of the testimony. That's her job,(sic) is to confront those witnesses. But at the end of the day, the jury may well say the prosecutor has met her burden of proof beyond a reasonable doubt."

Defendant was not a neophyte to the criminal justice system. He is a recidivist, who had sustained two prior convictions, including a burglary strike. *Cross, supra,* 61

7

Cal.4th at p. 180, [a defendant's "previous experience in the criminal justice system" is relevant to a recidivist's knowledge and sophistication regarding his [legal] rights.]

The probation report states that in July 2010, defendant was convicted of a residential burglary in violation of section 459, a strike, and in February of the same year, defendant was convicted of engaging in an illegal speed contest, in violation of Vehicle Code section 23109, subdivision (a).[3] In order to sustain these convictions, defendant either proceeded to trial and was convicted or plead guilty/no contest and was convicted. In either event, this previous experience in the criminal justice system is relevant to his knowledge regarding his legal rights.

The dissent concludes that in the absence of an express advisement of the right to trial *contemporaneous* with the stipulation and waiver at that very same time it is a "silent-record"[4] case and we look no further to determine if the stipulation is knowing and voluntary. In fact, we are mandated to "look further." *Cross, supra*, 61 Cal.4th at p. 180 directs that a reviewing court must review the whole record, instead of just the portion of the record reflecting the plea colloquy.

After a review of the whole record, this is not a "silent record" case. Utilizing the totality of the circumstances, this record establishes the stipulation was voluntary and intelligent—that defendant knew of and waived his constitutional rights when he and his counsel made the strategic decision to enter the stipulation.

---

[3]     We deny the Attorney General's request that we take judicial notice of copies of the docket of two criminal cases concerning defendant because the documents were not before the trial court. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

[4]     The four "truly silent-record" cases referred to in *Mosby, supra*, 33 Cal.4th at pp. 361-362 unlike our case, do not entail a stipulation to a substantive crime but rather entail a stipulation to a prior conviction as an enhancement or a factor in an alternative sentencing scheme which automatically exposed the defendant to increased punishment. In each of those cases, the defendants were not told on the record of their right to trial to determine the truth of the prior conviction allegation. Here, when defendant continued his case he was explicitly advised of his right to trial on the substantive charges. Moreover, nothing in *Mosby* imposes the requirement that the advisement be contemporaneous with a stipulation to one of multiple substantive crimes.

8

**DISPOSITION**

The judgment of conviction as to count 2, driving when defendant's driver's license was suspended or revoked under Vehicle Code section 14601.1, subdivision (a) is affirmed.


KIRSCHNER, J.[*]



I concur:



TURNER, P. J.

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Mosk, J., Dissenting

I respectfully dissent because I believe that the stipulation entered into on defendant's behalf, which stipulation admitted all of the elements of count 2, was invalid because he was not advised of, and did not waive, his trial rights.  In this case there was no express advisement to, or waiver by, defendant of his constitutional rights at the time of the stipulation—"a silent record" case as contrasted with an "incomplete advisement" case.  Under these circumstances, a reversal is required.

## A.    *Boykin-Tahl Applies to Stipulation*

Our Supreme Court recently stated that, "When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 89 S.Ct. 1709] (*Boykin*).)  As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each.  (*People v. Howard* (1992) 1 Cal.4th 1132, 1179 [5 Cal.Rptr.2d 268, 824 P.2d 1315] (*Howard*); see *Boykin*, at pp. 243-244*; In re Tahl* (1969) 1 Cal.3d 122, 130-133 [81 Cal.Rptr. 577, 460 P.2d 449] (*Tahl*).)[1]  Proper advisement and waiver of these rights, conducted with 'the utmost solicitude of which courts are capable,' are necessary 'to make sure [the accused] has a full understanding of what the plea connotes and of its consequence.'  (*Boykin*, at pp. 243-244.)"  (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*).)[2]

When a defendant's stipulation to submit a case for decision on the basis of the transcripts of the preliminary hearing, which stipulation under the circumstances could

---

[1]    Sometimes referred to as the *Boykin-Tahl* requirements.

[2]    Our Supreme Court *In re Yurko* (1974) 10 Cal.3d 857, at pages 861 through 865, extended the *Boykin-Tahl* requirements to defendants who intend to admit prior convictions.

offer him no hope of acquittal, the stipulation is "tantamount to a plea of guilty" and must be accompanied by *Boykin-Tahl* advice and waivers.  (*In re Mosley* (1970) 1 Cal.3d 913, 924-926, fn. 10; *People v. Levey* (1973) 8 Cal.3d 648, 653.)  "The phrase '"tantamount to a plea of guilty"' [was used in *In re Mosley*, *supra*, 1 Cal.3d 913] 'to explain [the] extension of the *Boykin-Tahl* requirements to submissions in which the guilt of the defendant was apparent on the basis of the evidence presented at the preliminary hearing and in which conviction was a foregone conclusion if no defense was offered.'  (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 602 [119 Cal.Rptr. 302, 531 P.2d 1086] (*Bunnell*).)"  (*People v. Cunningham* (2015) 61 Cal.4th 609, 637-638.)

The Supreme Court has said, "[O]ur case law . . .  has drawn a distinction between, on one hand, 'a defendant's admission of evidentiary facts which [does] not admit every element necessary to conviction of an offense or to imposition of punishment on a charged enhancement' and, on the other, 'an admission of guilt of a criminal charge or of the truth of an enhancing allegation where nothing more [is] prerequisite to imposition of punishment except conviction of the underlying offense.'  (*People v. Adams* (1993) 6 Cal.4th 570, 577 [24 Cal.Rptr.2d 831, 862 P.2d 831] (*Adams*).)  The requirements of *Boykin-Tahl* . . . apply to the latter type of admission but not the former.  (*Adams*, at pp. 580-583.)"  (*People v. Cross*, *supra*, 61 Cal.4th at p. 171; *People v. Epps* (1999) 74 Cal.App.4th 645, 652; *People v. Rodriguez* (1999) 73 Cal.App.4th 1324, 1329; *People v. Gaul-Alexander* (1995) 32 Cal.App.4th 735, 746.)  Citing *Adams, supra,* 6 Cal.4th 570, the Supreme Court has said "a defendant validly may 'stipulate to one or more, but not all, of the evidentiary facts necessary to a conviction of an offense . . . ,' without first having received such advisements."  (*People v. Newman* (1999) 21 Cal.4th 413, 415, overruled on other grounds as stated in *Cross*, *supra*, 61 Cal.4th at p. 179.]

In *People v. Little* (2004) 115 Cal.App.4th 766, the defendant was convicted of being under the influence of methamphetamine following his stipulation in language that mirrored the language of the information for that crime.  Concluding that the stipulation triggered a duty to give constitutional advisements and obtain waivers, the court said "the

2

*Boykin-Tahl* requirements . . . [are] applicable . . . when a defendant stipulates to each and every evidentiary fact or element of a charged offense necessary for a conviction and imposition of punishment or, . . . implicitly does so by stipulating, in language that mirrors the charges, that he or she violated a criminal statue." (*Id.* at p. 778.)

Defendant contends he was entitled to be advised of and waive his constitutional rights in connection with his stipulation. The stipulation admitted the elements of the offense charged as count 2, and the jury was instructed to accept the stipulated facts as true. The Attorney General agrees, conceding that the stipulation, which stipulation admitted both elements of the offense, "was tantamount to a guilty plea."

### B.    Silent Record Compels Reversal

The parties agree the record does not reflect that defendant was advised of any of his constitutional rights in connection with his stipulation, or, of course, that he waived those rights. The Attorney General argues, however, that the trial court's failure properly to advise defendant of his constitutional rights is not reversible error because defendant's "stipulation was voluntary and intelligent under the totality of the circumstances."

Prior to *Howard*, *supra*, 1 Cal.4th 1132, the failure to advise a defendant of his constitutional rights or secure his waiver of them prior to accepting a guilty plea under *Boykin*, *supra*, 395 U.S. 238 and *Tahl*, *supra*, 1 Cal.3d 122, or admission of a prior conviction under *In re Yurko, supra,* 10 Cal.3d 857, made the plea or admission generally automatically reversible, regardless of prejudice. (*Howard*, *supra*, 1 Cal.4th at pp. 1174-1175.) In *Howard supra*, 1 Cal.4th 1132, before trial, the defendant admitted that he had served a *prior prison term* (*id.* at p. 1174), and the court stated "the overwhelming weight of authority no longer supports the proposition" that "reversal when the trial court has failed to give explicit admonitions on each of the so-called *Boykin* rights. . . . [W]e now hold that *Yurko* error involving *Boykin/Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution. Under that test, a plea is valid if the record affirmatively shows that it is voluntary and

3

intelligent under the totality of the circumstances. [Citations]" (*Id*. at p. 1175.) The court concluded, "On this record, considering the totality of the relevant circumstances, we conclude that defendant's admission of the *prior conviction* was voluntary and intelligent despite the absence of an explicit admonition on the privilege against self-incrimination. Accordingly, we affirm the *special finding*." (*Id*. at p. 1180; italics added.)

About 12 years subsequent to *Howard*, *supra*, 1 Cal.4th 1132, the California Supreme Court in *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*) explained, "After our 1992 decision in *Howard*, *supra*, 1 Cal.4th 1132, our Courts of Appeal have applied its 'totality of the circumstances' harmless error test to a variety of cases ranging from no advisements or waivers to incomplete advisements and waivers." (*Mosby*, *supra*, 33 Cal.4th at p. 361.) In determining whether defective advisements require reversal, the court in *Mosby* drew a distinction between silent record cases—those cases that show no express advisement and waiver of constitutional rights at the plea colloquy (see *id*. at pp. 361-364), such as in the instant case—silent record cases—and those cases in which a defendant waives his constitutional rights after being advised of his right to trial on the prior conviction allegation, but not of the associated rights to remain silent and to confront witnesses (*ibid*.)—incomplete advisement cases. In silent record cases, a reviewing court cannot infer that the defendant knowingly and intelligently waived his rights to trial, to remain silent, and to confront witnesses. (*Id*. at p. 362.) In incomplete advisement cases, reversal is not required if "the totality of circumstances surrounding the admission" supports the conclusion that the admission was voluntary and intelligent. (*Id*. at p. 356.) That is, reversal is required in silent record cases without a harmless error analysis.

In *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, the defendant admitted to prior conviction allegations. (*Id*. at p. 1420.) In reversing the defendant's admissions and remanding the allegations for retrial, the court stated that it was a "silent-record case" because there was no express advisement or waiver of the *Boykin-Tahl* rights before

defendant made his admissions. (*Id*. at p. 1421.) The court held, "Under *Mosby*, we may not infer the admissions were voluntary and intelligent under the totality of the circumstances. . . . The error compels reversal of the prior conviction findings. (*Mosby*, *supra*, 33 Cal.4th at p. 362; *People v. Little*[, *supra*,] 115 Cal.App.4th [at pp.] 779-780 [].)" (*People v. Sifuentes*, *supra*, Cal.App.4th at p. 1421.)

Similarly, in *People v. Campbell* (1999) 76 Cal.App.4th 305, the defendant admitted to the truth of four prior conviction allegations. (*Id*. at p. 309.) The court reversed the defendant's admissions and remanded the allegations for retrial, stating, [*T*]*here were no admonitions* with respect to any of the three constitutional rights. . . . This record is inadequate to support a voluntary and intelligent waiver of rights . . . . [¶] Under *Howard*, we are not permitted to imply knowledge and a waiver of rights on a silent record. [Citations.]"[3] (*Id*. at p. 310.) Because the record here is silent regarding an express advisement to defendant and his waiver of his constitutional rights, the error compels reversal of the conviction on count 2.

The Supreme Court in *Cross*, *supra*, 61 Cal.4th 164 recently said, without any reference to *Mosby*, *supra*, 33 Cal.4th 353 and other appellate court decisions that distinguish between silent record cases and incomplete advisement cases, "The failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' (*Howard*, *supra*, 1 Cal.4th at p. 1175.)" (*Cross*, *supra*, 61 Cal.4th at p. 179.) In *Howard*, *supra*, 1 Cal.4th 1132, the case relied on by the court, some but not all advisements were given—i.e., it was not a silent record case. In *People v. Cross*, *supra*, 61 Cal.4th 164, the defendant "stipulated to [a] prior conviction, and the trial court

---

[3] *Howard*, *supra*, 1 Cal.4th 1132, did not expressly hold this. It merely recognized that *Boykin*, *supra*, 395 U.S. at p. 243 supported this proposition. *Boykin* was later interpreted in *Tahl*, *supra*, 1 Cal.3d at p. 132 as requiring that "'each of the three rights []—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea.' [Citation.]" (*Howard*, *supra*, 1 Cal.4th 1176.)

accepted the stipulation without advising [the defendant] of *any* trial rights or eliciting his waiver of those rights." (*Id*. at p. 168, italics added.) That is, it was a silent record case.

The Supreme Court noted that "[a]fter counsel read the stipulation in open court, the trial court immediately accepted it. The court did not ask whether [the defendant] had discussed the stipulation with his lawyer; nor did it ask any questions of [the defendant] personally or in any way to inform him of his right to a fair determination of the prior conviction allegation. [Citation.]" (*Cross*, *supra*, 61 Cal.4th at p. 180.) Although the record was silent as to an express advisement and waiver of constitutional rights, the Supreme Court continued, however, by what appears to be an examination of the record under the totality of the circumstances to determine whether the stipulation was voluntary and intelligent. Immediately after the quoted language above, it stated, "The stipulation occurred during the prosecutor's examination of the first witness in the trial; the defense had not cross-examined any witnesses at that point. [Citation.] Further, we have no information on how the alleged prior conviction was obtained. [Citation.]" (*Ibid*.) The court held that the unwarned stipulation was invalid and the trial court's failure to advise the defendant of his rights required reversal of the conviction found on the stipulation.[4]

I do not infer that *Cross*, *supra*, 61 Cal.4th 164 intended to overrule *Mosby*, *supra*, 33 Cal.4th 353, as to there being a distinction between silent record cases and incomplete advisement cases, for there was no mention in *Cross* of the distinction made in *Mosby*. It may well be that the issue of the distinction was never raised before the court. The court simply said *Mosby* applied the "totality of the circumstances" test. (*People v. Cross*, *supra*, 61 Cal.4th at pp. 179-180.) *Cross* reversed the conviction. So any suggestions that the court disagreed with *Mosby*, is at best dictum.

As stated in *People v. Campbell, supra,* 76 Cal.App.4th at page 310, "The Attorney General . . . contends we should infer from (defendant's) experience and

---

[4] The court also overruled *People v. Witcher* (1995) 41 Cal.App.4th 223, holding that a stipulation as to the existence of a prior conviction was tantamount to admitting all of the elements of an enhancement requiring that defendant be advised of and waive his constitutional rights. (*People v. Cross*, *supra*, 61 Cal.4th at pp. 175, 178-179.)

familiarity with the criminal justice system that he intelligently and voluntarily waived his rights. We decline to do so. If this experience were sufficient to constitute a voluntary and intelligent waiver of constitutional rights, courts would rarely be required to give *Boykin/Tahl* admonitions." The same logic applies to references to constitutional rights at earlier stages of the proceeding. We have no way of knowing if the defendant actually heard or understood any such references during earlier proceedings.

I would reverse the conviction for driving when defendant's driver's license was suspended or revoked under Vehicle Code section 14601.1, subdivision (a), and remand the matter to the trial court for possible retrial of that charge.


MOSK, J.